UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>　　　　　Plaintiff,<br>　　v.<br>GREGORY BELL,<br>　　　　　Defendant. | Case No. 3:21-cr-00407-JD-1<br><br>**PRETRIAL ORDER** |

　　As discussed at the pretrial conference on March 23, 2023, a jury trial is set for April 17, 2023, at 9:00 a.m., and will be conducted under these procedures and orders.

**I.　TRIAL SCHEDULE**

1. Trial will be held from 9:00 a.m. to 2:00 p.m. Monday through Thursday, with two 15-minute breaks. The daily schedule may be extended to conclude after 2:00 p.m., with an additional 30-minute lunch break, to reach the close of evidence. Friday may also be used as a trial day depending on circumstances.

**II.　VOIR DIRE & JURY SELECTION**

1. The Courtroom Deputy will distribute the written questionnaire responses to counsel by email by April 12, 2023. The responses will be discussed by Zoom webinar on April 13, 2023, at 11:00 a.m. The Courtroom Deputy will provide counsel with a link.

2. The Court will seat thirteen jurors using the "strike and replace" method. A prospective juror not excused after a round of challenges will be deemed a member of the jury and may not subsequently be challenged. The Court will conduct the voir dire based on its own questions and the questions proposed by the parties. The Court will post the proposed voir dire questions by April 13, 2023. The parties may raise any objections or concerns on April 17, 2023, at the start of jury selection.

3. The parties should be prepared to give an opening statement, if desired, and begin presenting witnesses on April 17, 2023.

## III.   OTHER TRIAL PROCEDURES

1. **Sidebars**.  There will be no sidebars during trial.  The parties should not ask for one.  Any issues that need to be discussed outside the presence of the jury may be raised before the start of the trial day or when the jury is on a break.

2. **Objections**.  Counsel must stand to state any objections, and should do so by simply stating the rule that forms the basis of the objection.  No arguments or elaborations should be made unless called for by the Court.

3. **Witnesses ready**.  Each party must have its witnesses for the trial day available in the courthouse and ready to testify.  Failure to have the next witness ready or to be prepared to proceed with the evidence will usually constitute resting.

4. **Disclosure of witnesses**.  The government will disclose its trial witnesses by 5 p.m. two calendar days before calling the witness to the stand (*e.g.*, by Monday at 5 p.m. for testimony on Wednesday).  An objection by the defendant must be filed no later than 5 p.m. on the day before the witness is to be called.  The Court will take up the objection outside the presence of the jury.

5. **Motions during trial**.  No motions may be filed during trial without the Court's prior approval.  Unauthorized motions will be summarily denied.

6. **COVID-19 protocols**.  Masks are not required for those who are fully vaccinated for COVID-19 (at least two rounds).  Both sides will be responsible for ensuring that their witnesses and every person on their respective trial teams are fully vaccinated and asymptomatic, and if not, fully masked at all times for the duration of trial.  Witnesses will not wear masks while testifying to aid the jury's comprehension and observation.  If an anticipated witness is not fully vaccinated, the party calling the witness must promptly notify the Court so that courtroom adjustments can be made.

7. **Jury seating arrangement**.  The jury will be seated in the jury box to the fullest extent possible.  If members of the jury express concerns about social distancing, the jury may

1     be rearranged in a staggered manner, with some jurors seated in the first rows of the
2     gallery.  In that case, all parties and counsel, especially on the government side, must
3     ensure that no screens, documents, or other case materials are visible to any jurors who
4     are seated nearby.

   8. **Jury notebooks**.  The parties will jointly prepare jury notebooks and bring 18 copies on the first day of trial.  The notebooks should be in the form of 1" 3-ring binders that have a plastic cover sleeve with a caption page (stating the case name and number), and must include these materials:

      i. 50 pages of blank lined paper.

      ii. Blank tabs for the jury instructions the Court will distribute.

## IV.    PRETRIAL MOTIONS

1. **Bell's Motion to Exclude Gunshot Residue Evidence (Dkt. No. 47)**:  **DENIED**.  As discussed on the record, the expert's analysis of the gunshot residue (GSR) was the product of reliable principles and methods, and supported by adequate data.  *See United States v. Holguin*, 51 F.4th 841, 854 (9th Cir. 2022).  Bell's objections based on the possibility of contamination go to the weight of the evidence, not whether the expert used scientifically reliable methods.  The fact that the expert's opinion expressly acknowledges the possibility that the GSR evidence came from other sources supports its reliability, as the expert is not claiming anything beyond what her method of analysis can prove.  *See* Dkt. No. 51-1 at ECF p. 49 (acknowledging that the presence of GSR on an individual's hands can simply indicate that the individual "touched a gun or other object with GSR on its surface and particles were transferred to the hands").  The probative value of the expert's testimony is not substantially outweighed by the danger of unfair prejudice, misleading the jury, or needlessly presenting cumulative evidence.  Fed. R. Evid. 403.

2. **Bell's Motion to Exclude DNA Evidence (Dkt. No. 49)**:  **DENIED IN PART**.  The DNA evidence challenged by Bell was analyzed using a probabilistic genotyping software program called STRmix.  *See* Dkt. No. 51-1 at ECF pp. 38-40; Dkt. No. 49-2

3

at ECF pp. 100-01. As discussed on the record, STRmix is widely recognized as a valid and reliable method for analyzing complex mixtures of DNA that contain DNA from multiple individuals. *See, e.g.*, *United States v. Gissantaner*, 990 F.3d 457, 464-67 (6th Cir. 2021). Bell does not dispute the reliability of STRmix as a general matter. *See* Dkt. No. 63 at 2. Instead, Bell challenges whether STRmix can be reliably applied to the quantity and quality of DNA that was found on the Glock 21 and Glock 22. *See id.* at 1-2.

Bell says that the DNA evidence was of such low quality that the government's expert could not accurately estimate the number of contributors (NOC) to the sample, which is one of the inputs for the STRmix program. *See* Dkt. No. 49 at 5. But the record before the Court establishes that the government's expert used scientifically reliable methods to estimate the NOC. *See, e.g.*, Dkt. No. 57-1 at ECF p. 4. The record also reflects that STRmix can be, and was, reliably applied notwithstanding some measure of uncertainty as to the NOC, and that the effects of overestimating and underestimating the true NOC have been studied and reported. *See id.* at ECF p. 5; *see also* Dkt. No. 49-2 at ECF pp. 85-86 (article published in the journal *Forensic Science International: Genetics*). Bell's objections are fodder for cross-examination and not grounds for exclusion.

Consequently, Bell's motion is denied with respect to the DNA evidence recovered from the Glock 21. For the reasons stated on the record, the DNA evidence from the Glock 22 is excluded as it has minimal probative value that is substantially outweighed by a danger of unfair prejudice. Fed. R. Evid. 402, 403.

3. **Bell's Motion in Limine (Dkt. No. 64)**: **GRANTED IN PART**. The shell casings discovered on Ingalls and Yosemite Avenue are excluded. Fed. R. Evid. 402, 403. The 48 photographs from the search of the white Jeep are needlessly cumulative. Fed. R. Evid. 403. The government will be permitted to introduce a reasonable number of these photographs. As for testimony regarding the circumstances surrounding the traffic stop

and the dark sedan shooting at the white Jeep, the government may introduce such testimony for table-setting purposes.  Bell's motion is denied in all other respects.

## V. JURY INSTRUCTIONS AND VERDICT FORM

1. **Proposed jury instructions**. As discussed with the parties, the second paragraph of proposed jury instruction 31 should be revised to begin:  "You may consider evidence of the defendant's prior conviction[s] only for purposes of considering . . . ."  Dkt. No. 56 at ECF p. 45.  Instruction 14, on stipulations of fact, should be revised to list the stipulated facts, as in the *Reynolds* case, No. 18-cr-158, Dkt. No. 207 at 22.  The revised instructions should remove brackets.

2. **Preparation of preliminary and final jury instructions**. The parties are instructed to revise the jury instructions and file them by **April 3, 2023**, at **12:00 p.m.**  The instructions should be filed separately as preliminary and final instructions.  To the fullest extent possible, the preliminary instructions should copy the language and format in the *Kepke* case, No. 21-cr-155, Dkt. No. 169, and the final instructions should do the same with respect to the *Reynolds* case, 18-cr-158, Dkt. No. 207.  The revised sets should include source notes, and parties must be sure to use the most recent publication of the Ninth Circuit's model criminal jury instructions.  Microsoft Word versions of both sets must be emailed to the Court's jdpo email address.  The parties will have an opportunity to comment on the final versions of these instructions before the Court reads them to the jury.

3. **Verdict form**. The parties are directed to file a proposed verdict form by **April 3, 2023**, at **12:00 p.m.**  The parties are directed to the verdict form provided in *Reynolds*, No. 18-cr-158, Dkt. No. 206, as a guide.

**IT IS SO ORDERED.**

Dated: March 27, 2023

JAMES DONATO
United States District Judge